IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHRISTIAN JENNINGS, § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:17-CV-3040-S-BK |
| § | |
| TOWERS WATSON, AN ENTITY, § | |
| A/K/A WILLIS TOWERS § | |
| WATSON PLC, § | |
|    DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b), Doc. 27, now before the Court are the parties' cross motions for summary judgment, Doc. 70, Doc. 72. For the reasons stated here, Defendant's motion should be **GRANTED**, and Plaintiff's motion should be **DENIED**.

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

In November 2017, *pro se* Plaintiff Christian Jennings filed her operative complaint against her former employer, Defendant Towers Watson, alleging claims of (1) civil conspiracy, (2) hostile work environment under Title VII of the Civil Rights of Act of 1964 ("Title VII") and the Americans with Disabilities Act of 2009 ("ADA"), (3) disability discrimination under the ADA, and (4) racial discrimination, presumably under Title VII. Doc. 11 at 9-14. The Court previously dismissed Plaintiff's civil conspiracy claim. Doc. 29, Doc. 38 Thus, her only remaining claims are those for racial and disability discrimination and hostile work environment.

Starting in August 2013 and for three years thereafter, Plaintiff performed seasonal work for Defendant as a "Benefits Advisor." Doc. 74-3 at 5-6 (PL Dep.). In May 2016, Plaintiff was rehired for a fourth season and required, as in all previous years, to participate in mandatory

training. Doc. 74-3 at 11 (PL Dep.). On the second day of training, May 24, 2016, Plaintiff fell and injured herself in Defendant's parking lot. Doc. 74-3 at 14 (PL Dep.). The next day, Plaintiff saw a doctor, who cleared her to return to work the following day but ordered her to limit walking and refrain from climbing stairs through June 1, 2016. Doc. 74-3 at 62 (PL Work Status Report). Consequently, Plaintiff did not return to training, which was held on a building's second floor, because she believed the building did not have an elevator. Doc. 74-5 at 3 (Decl. of DE's Former Manager). After denying Plaintiff's request that Defendant continue her training on the building's first floor, Defendant permitted Plaintiff to restart her training on June 6, 2016, which she thereafter completed. Doc. 74-3 at 19-22 (PL Dep.).

On June 15, 2016, Plaintiff's new supervisor, Kim Baker, discussed with Plaintiff, *inter alia*, the "importance of tardies and absences" and told her that if she was going to be absent or tardy, she should call and text the "manager-on-duty line" to inform of such. Doc. 74-3 at 25 (PL Dep.); Doc. 74-3 at 63 (Communication Between PL and Baker). A few days later, on June 20, 2016, Plaintiff filed a Charge of Discrimination (the "First Charge") with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged race and disability discrimination, retaliation, and failure to accommodate her disability and to timely pay her for 2.5 days of the aborted training week. Doc. 74-3 at 65 (PL First Charge).

On July 6, 2016, Baker issued and documented a verbal warning to Plaintiff, noting that throughout June and July 2016, Plaintiff was absent seven times, tardy twice, left work early twice, and failed to inform Baker that she would be absent or tardy as he had requested. Doc. 74-3 at 72 (PL Verbal Warning). The verbal warning also advised that failure to correct the behavior would result in a written warning and possible termination. *Id*. The next day, Plaintiff

met with Baker and two managers to discuss her attendance problems, after which she left early and then called off from work the next day. Doc. 74-2 at 3 (Baker Decl.); Doc. 74-3 at 35 (PL Dep.); Doc. 74-5 at 3 (Decl. of DE's Former Manager). Accordingly, on July 8, 2016, Baker issued Plaintiff a written warning based on her violations of the attendance policy. Doc. 74-3 at 74-76 (PL Doc. Written Warning).

Four days later, Defendant terminated Plaintiff, citing her negative attitude and insubordination, "specifically her violations of attendance policies and procedures." Doc. 74-3 at 77 (PL's Term. Letter); Doc. 74-5 at 4 (Decl. of DE's Former Manager). Plaintiff later filed a second EEOC charge (the "Second Charge"), alleging that she was terminated "in retaliation for filing" the First Charge. Doc. 74-3 at 78 (Second Charge).[1] Plaintiff received Right-to-Sue letters for the Second Charge on September 17, 2017, Doc. 13 at 5, and the First Charge on January 18, 2018, Doc. 28 at 2. She timely filed the instant lawsuit on November 2, 2017. Doc. 3.

## II.   APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). No genuine dispute of material fact exists where the record taken as a whole could not lead to a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When ruling on a motion for summary judgment, the Court is

---

[1] Although Plaintiff alleged retaliation in both EEOC charges, she never claimed retaliation in either complaint. *See generally* Doc. 11.

3

required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The Court is not, however, required to sift through the record in search of evidence to support a party's position. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.1992). Instead, parties should "identify specific evidence in the record," and articulate the precise manner in which that evidence supports their claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. PARTIES' ARGUMENTS AND ANALYSIS

#### A. Failure to Exhaust Administrative Remedies

Defendant argues that Plaintiff's claims for racial and disability discrimination and hostile work environment are barred for failure to exhaust administrative remedies because: (1) in her Second Charge, Plaintiff did not check the box for race or disability discrimination, and "her narrative does not include allegations related to" any discrimination; and (2) Plaintiff did "not allege harassment or hostile work environment" in either of her Charges. Doc. 73 at 20- 21. In her motion for summary judgment, Plaintiff argues, in relevant part, that "[h]er legal duty was to report the discrimination" and that she "received two right to sue letters from the [C]ommission to proceed in this instant action." Doc. 71 at 3.

Before a plaintiff can sue under Title VII, she must exhaust her administrative remedies by filing a charge with the EEOC. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). A plaintiff's claims in a Title VII lawsuit are limited to those within the scope of the EEOC charge or that could reasonably have been expected to "grow out of" the EEOC charge. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez v. Standard Brands, Inc*., 431 F.2d

4

455, 466-467 (5th Cir. 1970) (a plaintiff is constrained to claims that are "like or related to" the allegations contained in the charge).  Because the procedural requirements for filing an ADA claim incorporate Title VII's administrative procedures, an ADA claimant must also exhaust her administrative remedies before filing a claim in federal court.  *Patton v. Jacobs Eng'g Grp.*, 874 F.3d 437, 443 (5th Cir. 2017).

As an initial matter, neither of Plaintiff's EEOC Charges support a finding of exhaustion for her discrimination claims.  Plaintiff filed her First Charge on June 20, 2016, in which she checked the boxes indicating race and disability discrimination and retaliation and claimed that the alleged discrimination began and ended on May 26, 2016.  Doc. 74-3 at 65.  However, May 26, 2016 precedes any of the incidents that form the basis of Plaintiff's operative complaint.

Specifically, Plaintiff's claims of racial discrimination in the operative amended complaint, stem from disciplinary actions allegedly taken by Baker as her supervisor, including Plaintiff's termination, neither of which occurred until after Plaintiff filed the First Charge.  *See* Doc. 11 at 12-14; Doc. 74-3 at 77.  And clearly, Plaintiff's discrimination claims did not grow out of the First Charge, which expressly constrained her discrimination and retaliation allegations to May 26, 2016, and which predated all of the alleged discriminatory actions alleged in the amended complaint.

Moreover, as Defendant correctly notes, Plaintiff's Second Charge is wholly devoid any allegation of race- or disability-based discrimination.  Doc. 74-3 at 78.  And neither of Plaintiff's EEOC complaints mentions hostile work environment or alleges any facts that could even support an inference that Plaintiff was subjected to a hostile work environment.  Doc. 74-3 at 65; Doc. 74-3 at 78.  Indeed, in the Second Charge, there is no mention of the July 18, 2016 incident

that Plaintiff argues in her complaint substantiates her hostile work environment claim. *See* Doc. 11 at 8-9 (allegation that a co-worker heard a manager laughing and telling other female employees, *inter alia*, that Plaintiff was "not hurt" and "just did not want to work").

Consequently, Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiff's pending claims—for race and disability discrimination as well as hostile work environment—should be **DISMISSED WITH PREJUDICE**.

Alternatively, even if Plaintiff had exhausted her administrative remedies for her discrimination and hostile work environment claims, they fail as a matter of law.

   *A. ADA Disability Discrimination Claim*

Defendant argues, *inter alia*, that Plaintiff cannot establish that she was disabled under the ADA. Doc. 73 at 23-25. Plaintiff contends that she is entitled to summary judgment in her favor, arguing, in relevant part, that there "were no accommodations made to [her] injuries." Doc. 70 at 14; Doc. 75.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's claim fails because the condition on which it is based—a sprained ankle—is not a substantially limiting impairment. "Permanency [is] the touchstone of a substantially limiting impairment." *Waldrip v. General Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (citation omitted). Here, however, the uncontroverted evidence clearly establishes that Plaintiff's injury was not permanent. The uncontroverted facts are that Plaintiff: (1) saw a doctor on the day of her injury, who advised that Plaintiff could return to work the following day with some restrictions, and (2) recovered from

6

her injury within a few months. Doc. 74-3 at 18, 29 (PL Dep.); Doc. 74-3 at 62 (PL Work Status Report). *Cf. Waldrip*, 325 F.3d at 656 (noting that "the effects of an impairment, even some serious ones [such as cancer,] do not rise to a *substantial* limitation").

Moreover, based on the evidence of record, there is no genuine dispute that Plaintiff was never regarded by Defendant as having a substantially limiting impairment despite having none. An individual is "regarded as having a substantially limiting impairment if the individual: (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003) (quoting *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir.1996)).

As Plaintiff offers no evidence of disability under the ADA, Defendant is entitled to summary judgment on this claim.

B. Title VII Racial Discrimination Claim

Defendant argues, *inter alia*, that Plaintiff cannot establish that she suffered an adverse employment action or that any similarly situated non-African Americans were treated differently than she. Doc. 73 at 30-33. Plaintiff contends she is entitled to summary judgment in her favor on this claim because Baker: (1) "segregated the plaintiff and two other African American employees on Bakers (sic) team away from white and [H]ispanic teammates on the team," (2) "made a racially discriminatory comment about all black people having attitudes" and (3) "made comments" about Plaintiff's education level and competence. Doc. 70 at 14-15.

7

In a Title VII action, the plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). After the plaintiff makes such a showing, the burden shifts to the employer to show a legitimate, non-discriminatory reason for any adverse employment action. *Laxton v. Gap Inc.* 333 F.3d. 572, 578 (5th Cir. 2003). If the employer is successful in showing a legitimate, non-discriminatory reason for an adverse action, the burden shifts back to the plaintiff to provide substantial evidence that the proffered reason is a pretext for the discrimination. *Id.*

Plaintiff has not established her initial burden of showing a *prima facie* case of racial discrimination because she has not established an adverse employment action. To establish a prima facie case of racial discrimination, Plaintiff must show "that she (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment [as here], shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tx. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

The Court takes a "narrow view of what constitutes an adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). Only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" constitute adverse employment actions under Title VII. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citation omitted).

Neither of the incidents Plaintiff proffers in her complaint and motion for summary judgment rises to the level of an adverse employment action. *See, e.g., Breaux,* 205 F.3d at 157

8

("mere accusations or criticism" do not constitute adverse employment action); *Majdzadeh-Koohbanani v. Jaster-Quintanilla Dallas, LLP*, No. 3:09-CV-1951-G-BK, 2010 WL 5677911, at *7 (N.D. Tex. Dec. 20, 2010) (Toliver, J.) (finding that a seating arrangement was not an adverse employment action (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999), *recommendation accepted by* 2011 WL 335154 (Fish, J.))).

Even if a discrimination claim based on Plaintiff's July 2016 firing had been exhausted and she had met her burden of making a *prima facie* showing that she was terminated on account of her race, she cannot and has not presented any evidence that Defendant's non-discriminatory basis for her firing—unexcused and excessive absences and tardies—was pretextual. *See Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 142 (5th Cir. 1996) (for a plaintiff to prove pretext in a Title VII case, she "must show with competent summary judgment evidence" that the defendant's explanation for termination was pretextual). Indeed, Plaintiff concedes that she had multiple unexcused absences and tardies throughout June and July 2016, in the weeks leading up to her termination. *See* Doc. 74-3 at 42-43.

    C. *Hostile Work Environment*

To establish a *prima facie* case for hostile work environment, a plaintiff must prove that (1) she belongs to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment complained of was based on her protected characteristic, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive." *Hockman v. Westward*

9

*Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).  In deciding whether alleged conduct is objectively and subjectively abusive, courts consider (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance, (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the complained-of conduct undermines the plaintiff's workplace competence.  *Id.* at 326-26.  The conduct must be "more than rude or offensive comments, teasing, or isolated incidents."  *Id.*

      Defendant argues that Plaintiff's hostile work environment claim fails because, *inter alia*, Plaintiff's complaints do not rise to the level of severe or pervasive harassment that affected a term or condition of her employment, and that even if Plaintiff has established a *prima facie* case of hostile work environment, her claim is barred under Supreme Court precedent because she failed to complain internally about race-related or disability related harassment.  Doc. 73 at 35-38.  Conversely, Plaintiff contends she is entitled to summary judgment in her favor because, in relevant part, Baker (1) "made racially discriminatory comments about plaintiffs (sic) education level," (2) "[f]orced the plaintiff to sit and read the same slides in [S]harepoint daily never allowing her to take calls" and (3) told Plaintiff that the EEOC "can't save [her] job."  Doc. 70 at 10-11.  Moreover, in her response to Defendant's summary judgment motion, Plaintiff argues that Baker "called [her] incompetent more than once" and that her deposition testimony confirms the "constant harassment and belittlement faced daily."  Doc. 75 at 12.

      Upon review, the Court finds that Plaintiff has offered no evidence that Defendant's alleged conduct was objectively and subjectively abusive.  As evidence of a hostile work environment, Plaintiff asserts that: (1) she was forced to sit and read, rather than take calls, Doc.

10

70 at 10; (2) Baker said that the EEOC could not save Plaintiff's job, Doc. 70 at 10-11; (3) Baker once commented that "all black people have attitudes," Doc. 74-3 at 38; and (4) Baker believed that Plaintiff faked her injuries, Doc. 70 at 10-12. However, Plaintiff has failed to offer evidence that the complained of conduct was severe, physically threatening, or humiliating. Nor has she offered any evidence that any such conduct unreasonably interfered or undermined her workplace competence. Accordingly, even if Plaintiff's claim of hostile work environment had been exhausted, it would also fail on the merits.

## IV. CONCLUSION

For the reasons stated here, Defendant's motion for summary judgment, Doc. 72, should be **GRANTED**, and Plaintiff's motion, Doc. 70, should be **DENIED**. Plaintiff's initial motion for summary judgment, Doc. 51, should also be **DENIED AS MOOT**. As no claims will remain, the Clerk of the Court should thus be instructed to close this case.

**SO RECOMMENDED** on July 9, 2019.

_/s/ Renee Harris Toliver_
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).